## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEYON FREELAND,                     :     Civil No. 3:15-cv-965
                                    :
            Petitioner              :     (Judge Mariani)
                                    :
    v.                              :
                                    :
STEVEN GLUNT, et al.,               :
                                    :
            Respondents             :

FILED
SCRANTON

MAY 30 2018

PER_____
DEPUTY CLERK

### MEMORANDUM

Petitioner Keyon Freeland ("Freeland"), an inmate currently confined at the Rockview

State Correctional Institution in Bellefonte, Pennsylvania, filed the instant *pro se* petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The matter is proceeding *via*

an amended petition. (Doc. 8). Freeland challenges his conviction and sentence from the

York County Court of Common Pleas. (*Id.*). For the reasons discussed below, the Court

will deny the amended habeas petition.

### I.    Factual Background

The factual background of this case has been aptly summarized by the Pennsylvania

Superior Court as follows:

> On January 8, 2011, Kyree Maxfield and Ja'Quinn Barnes were walking
> around the City of York after leaving a party. They went to a friend's house
> on Smyser Street, but left to go home after a fight broke out in front of the
> Smyser Street residence. As Maxfield and Barnes left the house, a car pulled
> alongside them, and a man, later identified as Freeland, got out of the vehicle.
> Freeland told them to give him everything they had. He pulled out two guns,
> then ordered Maxfield and Barnes to undress and dress again. He then shot

at the pair, missing Barnes, but inflicting two gunshot wounds to Maxfield's left leg and one to his hand. At the time of the shooting, Maxfield and Barnes were about eight feet away from Freeland. The area was dimly lit and the shooter was not wearing a mask.

By the time police arrived minutes after the shooting, Freeland had left the area. Maxfield was then transported to the York Hospital. Dr. Keith Clancy treated Maxfield for the severe injury to his femoral artery, which caused him to lose his pulse in his leg and fifteen units of blood. Dr. Clancy testified that were it not for emergency surgery, Maxfield would have died.

On January 12, 2011 at around 3:45 p.m., Officer Ryan Anderson attempted to pull-over a gray sedan on Philadelphia Avenue by activating his lights and sirens. The vehicle pulled away and Officer Anderson pursued it. The chase continued until the sedan collided with a telephone pole, and the passenger and driver fled on foot in opposite directions. Officer Anderson chased the driver on foot, during which time the driver threw two objects from his person. These objects, retrieved after the driver and passenger were in custody, were guns, Officer Anderson identified the driver as Freeland, and one of the guns that Freeland threw during the chase was later determined to be one of the guns that shot Maxfield.

(Doc. 16-1, pp. 315-317, *Commonwealth v. Freeland*, No. 553 MDA 2012, unpublished

memorandum (Pa. Super. filed August 23, 2012) (footnotes omitted)).

## II.    State Court Proceedings

On January 19, 2011, Freeland was charged with two counts of criminal attempt

homicide, two counts of aggravated assault, and one count of persons not to possess a

firearm. *See* electronic docket sheet for *Commonwealth v. Freeland*, No.

CP-67-CR-0001946-2011 (York Cnty. Ct. Com. Pl.), found at https://ujsportal.pacourts.us.

Although represented by counsel, Freeland filed his own omnibus pre-trial motions,

including a motion for substitution of counsel. (Doc. 16-1, pp. 7-10, Motion for Substitution of Counsel). On September 26, 2011, Judge Richard K. Renn of the York County Court of Common Pleas scheduled a hearing on Freeland's motion for substitution of counsel for immediately prior to the commencement of trial. (Doc. 16-1, p. 11, Order Scheduling Hearing). Although scheduled, the hearing on Freeland's motion did not occur.

A jury trial was held from December 6, 2011 through December 8, 2011, in the Court of Common Pleas of York County. (*See Commonwealth v. Freeland*, No. CP-67-CR-0001946-2011; *see also* Doc. 16-1, pp. 12-292, N.T. Jury Trial, 12/6/11 - 12/8/11). On December 8, 2011, the jury convicted Freeland of attempted homicide of Maxfield, aggravated assault (causing serious bodily injury) of Maxfield, and illegal possession of a firearm. (Doc. 16-1, pp. 315-24, *Commonwealth v. Freeland*, No. 553 MDA 2012). The jury acquitted Freeland of the attempted homicide of Barnes, and aggravated assault (serious bodily injury) of Barnes. (*See id.*). On February 17, 2012, the court sentenced Freeland to an aggregate term of fourteen to twenty-eight years' incarceration in a state correctional institution. (Doc. 16-1, pp. 285-90, N.T. Sentencing, 2/17/12). Freeland filed a post-sentence motion, which the trial court denied. (*See* Doc. 16-1, p. 317, *Commonwealth v. Freeland*, No. 553 MDA 2012).

Freeland pursued direct appeal proceedings challenging the sufficiency of the evidence for attempted homicide, the publication to the jury of the red-tinged color photo

3

from the photo array lineup that he claimed depicted injuries to his face, and the trial court's admission of the police video of the car chase and flight on foot. *See Commonwealth v. Freeland*, 106 A.3d 768, 773 (Pa. Super. 2014). On August 23, 2012, the Pennsylvania Superior Court affirmed the judgment of sentence, rejecting all three claims. (*See* Doc. 16-1, pp. 315-24, *Commonwealth v. Freeland*, No. 553 MDA 2012). Freeland did not file a petition for allowance of appeal with the Pennsylvania Supreme Court. (*See* Doc. 8, p. 2).

On March 4, 2013, Freeland filed a *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (Doc. 16-1, pp. 325-332, PCRA Petition). The PCRA court appointed counsel, who filed an amended petition on April 24, 2013. *See Commonwealth v. Freeland*, 106 A.3d at 773. That counsel, and other counsel, were subsequently permitted to withdraw. *See id.* The PCRA eventually appointed Attorney Scott A. McCabe, who filed an amended petition on August 16, 2013. (Doc. 16-1, pp. 344-47, Amended PCRA Petition). On September 25, 2013, a hearing was held and the PCRA court denied relief from the bench. (Doc. 16-1, pp. 349-446, N.T. PCRA Hearing, 9/25/13). The PCRA court subsequently issued a written order denying relief, which also explained the reasons for its denial. *See Commonwealth v. Freeland*, 106 A.3d at 773.

On October 3, 2013, counsel filed a timely notice of appeal. (Doc. 16-1, p. 448, Notice of Appeal). On March 13, 2014, the Superior Court remanded the appeal back to the

4

PCRA court for a determination of whether counsel had abandoned Freeland by failing to file a brief. (Doc. 16-1, p. 477, Order, per curiam, 3/13/14). On remand, the PCRA court held a hearing and found that counsel had drafted a *Turner/Finley*[1] letter, but inadvertently failed to file and serve it in a timely fashion. (Doc. 16-1, pp. 479-85, N.T. Hearing, 3/27/14; *see also* pp. 482-84, Order, 3/27/14). The PCRA court concluded that counsel had not abandoned Freeland. (*See id.*). The PCRA court issued an order directing counsel to file and serve his *Turner/Finley* letter and application to withdraw with the Superior Court. (*See id.*). The PCRA court also recommended that the Superior Court permit counsel to file his *Turner/Finley* letter. (*See id.*).

On April 4, 2014, Attorney McCabe filed a petition to withdraw with the Superior Court, attaching his *Turner/Finley* "no merit" letter, with notice to Freeland that he had the right to proceed *pro se* or retain private counsel. *See Commonwealth v. Freeland*, 106 A.3d at 774. On April 29, 2014, Freeland filed an application for relief. *See id.* On May 2, 2014, he filed a *pro se* response to the *Turner/Finley* letter. *See id.* Freeland also requested an extension to file a "cross-appeal" in support of his opposition to counsel's petition to withdraw. *See id.* After being granted two extensions of time, Freeland filed a *pro se* brief in response to counsel's petition to withdraw. (Doc. 16-1, pp. 486-559, *Pro Se* Brief). On

---

[1]  *See Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 379 Pa. Super. 390, 550 A.2d 213 (1988) (*en banc*).

December 11, 2014, the Superior Court affirmed the decision of the PCRA court. (Doc. 16-1, pp. 596-624, *Commonwealth v. Freeland*, No. 1790 MDA 2013 (Pa. Super. filed December 11, 2014)). Specifically, the Superior Court granted counsel's petition to withdraw, finding that PCRA counsel fulfilled the mandates of *Turner/Finley,* the issues in the PCRA petition had no merit, and that Freeland's *pro se* response to counsel's *Turner/ Finley* letter did not entitle him to relief. *See id.*

## III.     Standards of Review

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

### A.     Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have

been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity

to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard*, 404 U.S. at 275, 92 S.Ct. 509).

In this case, Respondents contend that Freeland failed to properly exhaust his claims that trial counsel was ineffective for failing to request an instruction on prior bad acts, failing to object to statements made by Detective Clarkson, and failing to object to his alleged illegal sentence. (Doc. 16).

## B. Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

(1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate

that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v.*

*Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[2]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

## IV.    Discussion

### A.    Fourteenth Amendment Claim

Freeland argues that the trial court violated his Fourteenth Amendment rights by failing to conduct a hearing on his motion for substitute counsel. Freeland presented this claim on post-conviction appeal, and the state courts denied it as waived and meritless. Accordingly, Freeland will only be entitled to relief if the state court decisions were either

---

[2]    "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

contrary to, or an unreasonable application of, clearly established federal law.

The PCRA court addressed this claim as follows:

Attorney Gross testified that he was aware the Motion [for Substitute Counsel] was filed prior to trial; however, he had continued to meet with Defendant in preparation for trial even after the Motion was filed. (N.T. 9/ 25/13 pp. 49-51). When the court asked immediately prior to trial if there were any other issues outstanding, neither Defendant nor his counsel mentioned the Motion for new counsel. At that point, we considered the issue waived by Defendant. If the issue was not waived, we find the issue is without merit.

Defendant testified at the PCRA hearing as to the reasons he wanted new counsel and we would not have granted Defendant's request for any of the reasons stated. (N.T. 9/ 25/13 pp. 14-16).

(Doc. 16-1, pp. 462-63, PCRA Court's 1925(a) Statement).

The Pennsylvania Superior Court affirmed the PCRA court's judgment denying

postconviction relief, addressed this claim as follows:

Appellant claims denial of due process in the failure of the trial court to appoint new counsel prior to trial. (*See* Appellant's Brief, at 34-36). This claim against the trial court does not present a cognizable issue under the PCRA. *See* 42 Pa. C.S.A. § 9543; *see also Commonwealth v. Smith*, 69 A.3d 259, 266 (Pa. Super. 2013), *appeal denied*, 83 A.3d 168 (Pa. 2013) (noting that "'the right to appointed counsel does not include the right to counsel of the defendant's choice.' Rather, the decision to appoint different counsel to a requesting defendant lies within the discretion of the trial court.") (citations omitted).

Moreover, it would not merit relief. The PCRA court confirmed that it would not have granted the request for new counsel based on *any* of the reasons Appellant gave at the PCRA hearing. (*See* PCRA Court Opinion, 12/10/13, at 6). Therefore, even if re-framed as a claim of ineffective assistance of counsel for failure to object, the issue would fail because Appellant's underlying claim lacks arguable merit. Furthermore, because the PCRA court

confirmed that it would *not* have appointed new counsel for any of the reasons advanced by Appellant, Appellant cannot prove prejudice. Notably, the PCRA court also resolved all issues of credibility in favor of trial counsel, and against Appellant. (*See id*. at 5 n. 1).

*Commonwealth v. Freeland*, 106 A.3d at 780 (emphasis in original).

The Sixth and Fourteenth Amendments guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment. *See Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Consequently, the Sixth Amendment right to counsel does not guarantee a meaningful relationship between a defendant and counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Additionally, although a defendant's right to counsel includes the right to counsel of one's choice, the "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Thus, an indigent defendant requesting new counsel must show good cause to warrant such substitution. Determining if good cause exists for substitution of counsel is a

factual inquiry, and the defendant must be given an opportunity to provide the court with the reason for his dissatisfaction. *United States v. Welty*, 674 F.2d 185, 190 (3d Cir. 1982).

Good cause for substitution of counsel is defined as a "conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995). A disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel, nor does a defendant's unilateral decision not to cooperate with court appointed counsel. *Id.* at 1098-99; *United States v. Gibbs*, 190 F.3d 188, 207 n. 10 (3d Cir. 1999). A defendant's mere dissatisfaction with counsel also does not warrant substitution of counsel. *See United States v. Moses*, 58 F. App'x 549, 555 (3d Cir. 2003). If the trial court determines that good cause for substitution of counsel does not exist, then the court must "inform the defendant that he can either proceed with current counsel or represent himself." *Goldberg*, 67 F.3d at 1098.

The following state standard pertaining to substitution of counsel is clearly in line with prevailing federal law. Pennsylvania Rule of Criminal Procedure 122(C) provides "[a] motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). To satisfy this standard, a defendant must demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him. *Commonwealth v. Spotz*, 562 Pa. 498, 756

A.2d 1139, 1150 (2000) (citing *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617, 619 (1976)). The decision whether to appoint new counsel lies within the trial court's sound discretion. *Id.* (citing *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462, 465 (1975)).

At the PCRA hearing, Freeland testified that he sought substitute counsel based on trial counsel's failure to file a suppression motion, failure to appeal an adverse Rule 600 decision prior to trial, and failure to discuss evidentiary issues with him sooner than he did. (Doc. 16-1, pp. 360-64, N.T. PCRA Hearing, 9/25/13). The state courts found that all of these reasons lacked merit, and that Freeland failed to establish good cause for substitution of counsel. Also at the PCRA hearing, trial counsel testified that he was aware of Freeland's *pro se* motion for substitute counsel, however, Freeland never told him that he wanted him removed from the case, and he did not remember the motion until his closing argument. (Doc. 16-1, pp. 398-400, N.T. PCRA Hearing, 9/25/13). Further, Freeland testified that nothing prevented him from reminding the Court that he had filed a motion for new counsel. (Doc. 16-1, pp. 389-90, 9/25/13). Freeland acknowledged that the trial judge asked if there were any outstanding matters prior to jury selection, to which Freeland did not respond or alert the trial judge of his outstanding motion for substitute counsel. (*Id.*).

Freeland's argument that his due process rights were violated when the trial court failed to appoint new counsel prior to trial is unavailing. First, Freeland waived this claim by failing to raise it prior to trial. Second, there is nothing in the state court record, or in

Freeland's filings in this Court, indicating that his trial counsel had either an actual or apparent conflict. Indeed, Freeland specifically acknowledged that there was no conflict of interest. (Doc. 16-1, p. 361, N.T. PCRA Hearing, 9/25/13). Instead, it appears that Freeland's request for substitute counsel was simply due to perceived differences between himself and trial counsel. (*Id.*). Presented with what appears to be nothing more than Freeland's preference for different counsel, the Court concludes that the state court decisions were not contrary to clearly established federal law. Accordingly, the Court will deny this claim.

## B.     Ineffective Assistance of Counsel Claims

Freeland alleges ineffective assistance of counsel on the following grounds: (1) trial counsel failed to request an instruction on prior bad acts; (2) trial counsel failed to object to statements made by Detective Clarkson; (3) trial counsel failed to file a pre-trial motion to exclude the video evidence, and failed to object to the video evidence at trial; (4) trial counsel failed to request a jury instruction on consciousness of guilt; (5) trial counsel failed to request to reopen cross-examination of Ja'Quinn Barnes; (6) trial counsel failed to object to the sentence imposed by the trial court; and (7) PCRA counsel failed to raise substantial ineffective assistance of trial counsel claims. (Doc. 8).

The record reflects that Freeland failed to properly exhaust his claims that trial counsel was ineffective for failing to request an instruction on prior bad acts, failing to object

to statements made by Detective Clarkson, failing to object to the video evidence, and failing to object to his sentence. The remainder of Freeland's ineffective assistance of counsel claims were addressed by the state courts on the merits and, therefore, are subject to AEDPA review.

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will

not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

### 1. Trial Counsel's Failure to Request an Instruction on Prior Bad Acts and Failure to Object to Alleged Inadmissible Hearsay

Freeland argues that trial counsel was ineffective for failing to request an instruction

on prior bad acts, and failing to object to statements made by Detective Clarkson. The record reflects that Freeland failed to raise either of these issues at the state court level. His failure to timely present these claims at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of his claims. *Barnhart v. Kyler*, 318 F. Supp.2d 250 (M.D. Pa. 2004). The merits of Freeland's procedurally defaulted claims cannot be reviewed unless he demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, he must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993). Freeland fails to acknowledge his procedural default of these claims, and fails to allege any cause and prejudice to excuse it. (*See* Doc. 20). *See Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that the petitioner's failure to allege cause for his default precluded federal habeas review of a defaulted claim). Nor is there any indication that a failure to review these claims will result in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (providing that

"miscarriage of justice" exception requires petitioner to come forward with new evidence of actual innocence). Consequently, Freeland is precluded from pursuing federal habeas corpus relief with regard to these issues.

Furthermore, any attempt by Freeland to exhaust his state remedies at this time would be futile, because these claims are procedurally defaulted due to waiver of the claims and expiration of the PCRA statute of limitations. *See* 42 Pa. C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); 42 Pa. C.S.A. § 9545(b) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final"). As such, Freeland is in procedural default for failing to comply with the state filing requirements.

### 2. Trial Counsel's Failure to File a Pre-Trial Motion to Exclude the Video Evidence and Failure to Object to the Video Evidence at Trial

Freeland next argues that trial counsel was ineffective for failing to file a pre-trial motion to exclude the video evidence, and failing to object to the video evidence at trial. The record reflects that Freeland waived his claim that trial counsel was ineffective in the way he handled the video evidence. On direct appeal, the Superior Court addressed this claim as follows:

Freeland's last claim is that the trial court erred in allowing the jury to view the video from the police cruiser that shows Freeland fleeing from the police.

As stated above, the admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. *Hawk, supra.* Relevant evidence may be excluded if its probative value is outweighed by its unfair, prejudicial effect on the defendant. Pa. R.E. 403.

In the present case, the claim that the trial court erred in allowing the jury to view the video from the police cruiser was not properly preserved at trial through objection, and is thus deemed waived. Pennsylvania Rule of Evidence 103(a)(1) states that "[e]rror may not be predicated upon a ruling that admits or excludes evidence unless . . . a timely objection . . . appears of record, stating the specific ground of the objection[.]" Pa. R.E. 103(a)(1). *See also* Pa.R.A.P. 302 (issues not raised in lower court waived on appeal). A thorough review of the transcript shows that Freeland's counsel failed to object both while the Commonwealth played the footage of the car chase that questioned Officer Anderson regarding the video, as well as when the Commonwealth sought to introduce the video into evidence. N.T. Trial, 12/7/11, at 218-50.

[FN 7 - Even had Freeland preserved the issue for appeal, his claim would still fail. The evidence here was relevant in that it established flight from the police and thus a consciousness of guilt. *See Commonwealth v. Thompson,* 739 A.2d 1023, 1028 (Pa. 1999) ("[I]t has long been the view in this Commonwealth that an attempt to escape police custody shows a consciousness of guilt."). Therefore, the video of Freeland's attempt to escape police was relevant in showing his consciousness of guilt regarding the crime at issue in the trial. In addition, the probative value of the video outweighed the dangers of unfair prejudice, confusion of the issues, misleading the jury, or presenting cumulative evidence. The trial court thus did not abuse its discretion or commit an error of law in permitting the jury to see the video of the police chase.].

(Doc. 16-1, pp. 322-23, *Commonwealth v. Freeland,* No. 553 MDA 2012).

Freeland has procedurally defaulted the claim that trial counsel was ineffective for

not objecting to the video from the police cruiser that showed Freeland fleeing from the police. Freeland has waived this claim under state law and, as a result, has procedurally defaulted this claim in this forum. *See Suarez v. Pennsylvania*, 2014 WL 2922283 (M.D. Pa. 2014) (concluding that where the state court on direct appeal found the claims waived because no objection had been made at trial, federal habeas review is precluded unless the petitioner can demonstrate cause and prejudice, or that a failure to consider the claims will result in a fundamental miscarriage of justice) (citing *Sloan v. Attorney General of Pennsylvania*, 2010 U.S. Dist. LEXIS 101854, *33-34 (W.D. Pa. 2010)); *see also Solano v. Lamas*, 2014 WL 2567166 (M.D. Pa. 2014). Freeland is not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris v. Reed*, 489 U.S. 255, 260-63 (1989); *Morris v. Horn*, 187 F.3d 333, 342 (3d Cir. 1999).

As discussed *supra*, to demonstrate "cause" for a procedural default, the petitioner must show that "some objective factor external to the [petitioner's] defense impeded [his] efforts to comply with [a] procedural rule." *Murray*, 477 U.S. at 488. "Examples of external impediments which have been found to constitute cause in the procedural default context include 'interference by officials,' 'a showing that the factual or legal basis for a claim was

not reasonably available to counsel,' and 'ineffective assistance of counsel.'" *Wise v. Fulcomer*, 958 F.2d 30, 34 n.9 (3d Cir. 1992) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Freeland appears to attempt to overcome his procedural default by arguing that any failure to obtain state court review of this claim was due to no fault of his own. (Doc. 20, p. 7). Freeland additionally posits that if trial counsel had objected to the video evidence, the state proceedings and the basis of his conviction would have been different. (Doc. 10, p. 40). However, this conclusory allegation fails to establish a sufficient showing of deficient performance, and thereby fails under the first prong of *Strickland*. Moreover, Freeland has failed to demonstrate how trial counsel's decision not to object to the video evidence prejudiced his case. This claim was aptly addressed by the Superior Court on direct appeal, wherein the Court found that the video evidence was relevant in that it established flight from the police and a consciousness of guilt regarding the crime at issue in the trial. (Doc. 16-1, pp. 322-23, *Commonwealth v. Freeland*, No. 553 MDA 2012). The Superior Court further noted that the probative value of the video outweighed the dangers of unfair prejudice, confusion of the issues, misleading the jury, or presenting cumulative evidence, and that the trial court did not err in permitting the jury to see the video of the police chase. (*Id.*). It is well-settled that trial counsel cannot be deemed ineffective for failing to raise a meritless issue. *See Edrington v. Klopotoski*, 2015 WL 999241, at \*7 (M.D. Pa. 2015) (citing *Hartey v. Vaughn*, 186 F.3d 367, 372 (3d Cir. 1999)) ("[C]ounsel cannot be

deemed ineffective for not pursuing a meritless claim"). Accordingly, Freeland has failed to show prejudice under the second prong of *Strickland*.

Consequently, Freeland has failed to identify justifiable cause to excuse his default, and this claim will be denied as procedurally defaulted.

### 3. Trial Counsel's Failure to Request Jury Instruction

Freeland next argues that trial counsel was ineffective for failing to request an instruction on consciousness of guilt. The PCRA court addressed this issue in its 1925(a) Statement in Support of its Decision and found that trial counsel did not render ineffective assistance of counsel by failing to request a jury instruction on consciousness of guilt. (Doc. 16-1, pp. 458-62, PCRA Court's 1925(a) Statement). At the PCRA hearing, trial counsel testified on direct and cross-examination as follows:

> Q.     I would like to draw your attention now to the last issue of the consciousness of guilt instruction with the video.
>
> A.     Yes.
>
> Q.     Did you discuss the video with the Defendant?
>
> A.     I did.
>
> Q.     And what was your strategy with respect to the video?
>
> A.     The video was very damaging because you have him jumping over the car after crashing that vehicle and taking off and then being seen by, I want to say Ryan –
>
> Q.     Anderson, does that sound correct?

A.    Correct. Running down and pitching two guns. We had to deal with that. Saying that everyone is lying isn't the best strategy at trial. So the idea there was okay, let's say that they are thrown, okay. We still have no proof that he knew or anything about, you know, from before with those weapons. Because obviously we wanted to show that they were thrown, it was another person running, it was a high crime type area and other guns could have been around. That was tough.
As far as keeping it out, really the best I could do would be to limit what would be prejudicial, you know, him in this chase in the city. And right before trial the judge essentially looked at me and said, "That would be consciousness running at that time." Even if he believed that he had a reason to run away with guns, you know, as opposed to knowing that he was involved with this homicide, I mean, that is something that we ran into. That was the point that we brought out was this happened after the fact, you know, days later. You know, there has been a lot of time between them. How can you say that these guns here would be with that individual days before.

Q.    And with respect to the alternate innocent explanation, did you discuss that with him?

A.    Oh, basically just stipulating to the fact that he was in a stolen car.

Q.    Well, let me ask you this. Can you think of any alternate explanation for the video as you described it?

A.    The only way to have him come out and say anything would be taking the stand, which we discussed and we did not want to put ourself in that situation. And anything he says is going to sound ludicrous because we can't get past -- even if the video would go away, we now have an officer chasing him, and as I described, one gun flying up in the air and landing. That is hard. That is extremely hard.

. . .

[on cross-examination:]

Q.    And finally with regard to the consciousness of guilt instruction, you

testified that in order to put up any argument or anything with regard to explanation to or to try to explain to the jury what are the circumstances and why is he running from the police or why he is driving away from the police, that you would expect that Mr. Freeland would have had to testify in order to make that argument in front of the jury?

A.   That would be the only way for him to bring that up. I couldn't think of anything that made even an ounce of sense, because I have to stand in front of a jury and essentially tell them or have them feel what the situation is. If it is ludicrous, it is not going to work. So instead the idea was to bring distance, okay, this gun may have been something that was used, but how do you know it was by this individual at that time?

Q.   Did you have that discussion with Mr. Freeland prior to trial?

A.   I know I did. I know for a fact I did. Because he was really irritated early on by the fact that he did not have a sweatshirt on when they picked him up, but the person sliding across the hood on the video had a sweatshirt on. I explained to him that you didn't have a sweatshirt on because you took it off, which would explain that you wouldn't have had it on. And things like that are when he and I would have some arguments. We would resolve it and move forward to try to get it resolved to help the young man out, because I think he was only 19 when this occurred.

(Doc. 16-1, pp. 400-02, 407-09, N.T. PCRA Hearing, 9/25/13).

When presented with this claim, the PCRA court concluded that the claim lacked arguable merit and Freeland was not entitled to relief. (Doc. 16-1, pp. 458-62, PCRA Court's 1925(a) Statement). At the PCRA hearing, trial counsel articulated a sound and reasonable basis for not seeking jury instruction on consciousness of guilt. (Doc. 16-1, pp. 400-02, 407-09, N.T. PCRA Hearing, 9/25/13). Specifically, trial counsel testified that he

could not think of an alternative, innocent explanation for Freeland's flight. (*Id.*). Freeland

testified at the PCRA hearing that his contention was that he was fleeing the police because

he was driving a stolen car without a license, not that he was fleeing the police because he

shot Maxfield. (Doc. 16-1, pp. 371-74, N.T. PCRA Hearing, 9/25/13). However, trial

counsel testified that his strategy was to acknowledge the video, and move on without

drawing unnecessary attention to it. (Doc. 16-1, pp. 400-02, 407-09, N.T. PCRA Hearing,

9/25/13). His strategy was to focus on the time delay between the shooting and the date of

video, arguing to the jury that it was not likely that a person would hold on to a gun he

purportedly used in a shooting days earlier. (*Id.*).

In evaluating whether counsel's performance was deficient, the Court must defer to

counsel's tactical decisions, avoid "the distorting effects of hindsight" and give counsel the

benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689. The Court

finds that Freeland has not provided sufficient evidence to show that the representation by

his trial counsel fell below an objective standard of reasonableness. Additionally, Freeland

has not demonstrated that there was a reasonable probability that if his trial attorney had

requested a jury instruction on consciousness of guilt, the result would have been different.

As the Supreme Court has clarified, actions of counsel that "might be considered sound trial

strategy" do not constitute ineffective assistance. *Strickland*, 466 U.S. at 689; *see also*

*Fahy v. Horn*, 516 F.3d 169, 204 (3d Cir. 2008). Consequently, Freeland's argument that

trial counsel was ineffective for failing to request a jury instruction on consciousness of guilt

is without merit. The amended habeas petition will be denied on this ground.

### 4. Trial Counsel's Failure to Request to Reopen Cross-examination

Freeland next argues that trial counsel was ineffective for not requesting to reopen

the cross-examination of Ja'Quinn Barnes. Similarly, in his PCRA petition, Freeland

claimed that trial counsel was ineffective for not properly cross-examining Mr. Barnes. At

the PCRA hearing, trial counsel testified as follows:

Q. Tell me about JaQuinn's testimony?

A. He did awful at the time of trial which was terrific. I was so happy
when he mentioned that he was running away at trial or running away
from the Defendant where the shooting occurred because in my
experience people that are running away from a shooter don't see
what is happening and I really liked that. I really wanted to focus on
that aspect as opposed to nickel and dime things to allow him to cure
his prior testimony at the time of trial.

Especially the lighting conditions, too. He mentioned, I believe, that it
was light out and he could see. And I want to say Officer Jay, possibly
was, I think he is the thicker officer from the city that arrived on scene,
and he said that there were lights there and he couldn't see. I am
thinking to myself, he could not see which made me even think this is
terrific. The officer who is credible says that it is very dark and you
cannot see, but the person running in the opposite direction can see
everything perfectly who actually was drunk and high.

Q. Would it be fair to say that your approach in questioning JaQuinn was
to highlight the absurdities in his testimony?

A. Well, absolutely.

(Doc. 16-1, pp. 397-98, N.T. PCRA Hearing, 9/25/13).

When addressing Freeland's claim that trial counsel was ineffective for not requesting to reopen the cross-examination of Ja'Quinn Barnes, the PCRA court concluded that the claim lacked arguable merit and Freeland was not entitled to relief. (Doc. 16-1, pp. 458-62, PCRA Court's 1925(a) Statement). As outlined above, at the PCRA hearing, trial counsel articulated a sound and reasonable basis for not requesting to reopen the cross-examination of Ja'Quinn Barnes. (Doc. 16-1, pp. 397-98, N.T. PCRA Hearing, 9/25/13). Specifically, trial counsel testified that Barnes testified "awful[ly]" for the Commonwealth, his strategy was to highlight the more unbelievable parts of Barnes' testimony rather than highlight the inconsistencies, and he wanted to avoid a situation whereby Barnes could explain or rehabilitate his inconsistent statements. (Doc. 16-1, pp. 397-98, N.T. PCRA Hearing, 9/25/13). Further, he noted that some of Barnes' statements were inconsistent with the statements of the police officer, who trial counsel believed was a more credible witness. (Id.).

As stated supra, when evaluating whether counsel's performance was deficient, the Court must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. Strickland, 466 U.S. at 689. The Court finds that Freeland has not provided sufficient evidence to show that the representation by his trial counsel fell below an objective standard of reasonableness.

Additionally, Freeland has not demonstrated that there was a reasonable probability that if his trial attorney had reopened cross-examination of Barnes, the result would have been different. Consequently, Freeland's argument that trial counsel was ineffective for failing to request to reopen the cross-examination of Ja'Quinn Barnes is without merit. The amended habeas petition will be denied on this ground.

### 5. Ineffective Assistance of Counsel at Sentencing

Freeland argues that his trial counsel rendered ineffective assistance of counsel for failing to object to his sentence. The record reflects that the sentence imposed was within the guideline range, and none of the sentences exceeded the statutory maximum. The record further reflects that Freeland failed to raise this claim at the state court level.

The Court finds that Freeland has procedurally defaulted this claim. Accordingly, he is not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 260-63; *Morris*, 187 F.3d at 342. He cannot do so.

Notably, Freeland does not even acknowledge his procedural default, let alone allege cause and prejudice to excuse it. (*See* Doc. 20). For this reason alone, the default must stand. *See Teague*, 489 U.S. at 298 (holding that the petitioner's failure to allege

29

cause for his default precluded federal habeas review of a defaulted claim). Further, he has

not attempted to show that a miscarriage of justice would occur from a failure to consider

the defaulted claim. *See Schlup*, 513 U.S. at 327 (providing that "miscarriage of justice"

exception requires petitioner to come forward with new evidence of actual innocence).

Because Freeland has not alleged, and cannot establish, cause and prejudice or a

miscarriage of justice to excuse the default, federal review of this claim is unavailable.[3] *See*

*Coleman*, 501 U.S. at 750.

### 6. *Ineffective Assistance of PCRA Counsel*

Lastly, Freeland generally states that "during the petitioner's PCRA proceedings,

appointed counsel failed to raise substantial ineffective assistance of trial counsel claims."

(Doc. 8, p. 6). Freeland argues that the failure of PCRA counsel to advance certain

ineffective assistance of trial counsel claims in his PCRA proceedings constitutes ineffective

---

[3] Generally, sentencing is a matter of state criminal procedure and a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding. *See Wooten v. Bomar*, 361 U.S. 888, 80 S.Ct. 161, 4 L.Ed.2d 122 (1959); *Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *see also* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). As such, a federal court normally will not review a state sentencing determination that falls within the statutory limit, *Williams v. Duckworth*, 738 F.2d 828, 831 (7th Cir. 1984), as the severity of a sentence alone does not provide a basis for habeas relief, *Smith v. Wainwright*, 664 F.2d 1194 (11th Cir. 1981) (holding that a sentence imposed within the statutory limits can not be attacked in habeas proceeding). *Accord United States v. Myers*, 374 F.2d 707 (3d Cir. 1967). Unless the state sentencing court committed a constitutional violation, a federal court has no basis to grant habeas relief. *United States v. Addonizio*, 442 U.S. 178, 186, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). As the record reflects, none of Freeland's sentences exceeded the statutory maximum. The sentence cannot be deemed "illegal" under Pennsylvania law and even if it had been, that is a state law issue not cognizable in federal habeas corpus.

assistance of counsel. (Doc. 10, p. 30). The United States Supreme Court has recognized

that, under certain circumstances, the procedural default of an ineffective assistance of trial

counsel claim may be excused where the default was caused by ineffective assistance of

counsel in post-conviction collateral proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 6-18

(2012). Specifically, the *Martinez* Court held that:

> [A] procedural default will not bar a federal habeas court from hearing a
> substantial claim of ineffective assistance at trial if, in the [state] initial-review
> collateral proceeding, there was no counsel or counsel in that proceeding was
> ineffective.

*Martinez*, 566 U.S. at 17.

The *Martinez* Court limited its holding to cases where "under state law, claims of

ineffective assistance of trial counsel must be raised in an initial-review collateral

proceeding." *Id.* Shortly thereafter, the Supreme Court revisited its *Martinez* holding,

extending it to apply not only to cases where state procedural law expressly prohibited

ineffective assistance claims on direct appeal, but also where "state procedural framework,

by reason of its design and operation, makes it highly unlikely in a typical case that a

defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial

counsel on direct appeal." *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). The Third

Circuit has subsequently examined Pennsylvania procedural law and found that Martinez

applies in Pennsylvania. *Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014).

Freeland's claim of ineffective assistance of counsel at his collateral proceedings

falls within the scope of the *Martinez* rule. Under *Martinez*, the failure of a federal habeas petitioner's counsel to raise a claim in an initial-review collateral proceeding can constitute cause if: (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under *Strickland*, 466 U.S. at 687; and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one." *Martinez*, 566 U.S. at 14. "Under *Strickland*, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). A petitioner must overcome the strong presumption that his trial counsel's conduct fell "within the wide range of reasonable professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Even if a petitioner demonstrates that his attorney's performance fell below prevailing professional norms, habeas relief will only be available if he further demonstrates that this deficient performance prejudiced his defense. A petitioner must show that there is "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court may deny an ineffective assistance of counsel claim solely upon a petitioner's failure to make a sufficient showing under either prong. *Id.* at 687, 697.

In the case at bar, Freeland fails to set forth any substantive claims regarding the

ineffectiveness of PCRA counsel. (*See* Docs. 8, 10; *see also* Rule 2(c)(3) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254 (a petitioner must "state the facts supporting each ground" specified in the petition)). Instead, Freeland sets forth conclusory statements that PCRA counsel was ineffective, and surmises that he "could be procedurally defaulted from raising certain claims of trial counsel's ineffectiveness" due to PCRA counsel's ineffectiveness. (Doc. 10, p. 30). However, as stated *supra*, the PCRA court and the Superior Court concluded that trial counsel was not deficient in his representation of Freeland, and this Court has found herein that there was no unreasonable determination of the facts or unreasonable application of clearly established federal law. Because Freeland's underlying ineffective assistance of trial counsel claims lack merit, any claims for relief under *Martinez* fail.

Notably, Freeland admitted to the prosecutor in the PCRA hearing that he shot at the victims. (*See* Doc. 16-1, pp. 383-84, N.T. PCRA Hearing, 9/25/13). However, he argued that lacked the intent to kill because he only shot the victim in the leg. (*Id.*). The following interchange occurred at the PCRA hearing:

> THE COURT: So since you went to trial, how is it ineffective that you don't take a plea deal?
>
> DEFENDANT: Because he never gave me a deadline to cop out or anything.
>
> THE COURT: Because I am looking at the evidence that is offered against me. The evidence they got—basically he is telling me that it is a 10 millimeter shell casing with a 9 millimeter gun.

THE COURT: Well, did you shoot at these guys?

DEFENDANT: My thing was they offered me for two aggravated assaults—

THE COURT: No, answer my question.

DEFENDANT: I am going to answer it.

THE COURT: Did you shoot these guys?

DEFENDANT: No.

THE COURT: Then how could you have taken a plea deal? How could any of that be ineffective? Were you going to lie to the Court?

DEFENDANT: Never mind, man.

THE COURT: No, I want an answer to the question. You raised it now answer the question.

DEFENDANT: I wasn't intending to kill no one, that is my thing. That is why I went to trial. I was not intending to kill anyone, so I wasn't going to cop out to two aggravate assaults when one person got shot.

. . .

DEFENDANT: May I say something?

THE COURT: Sure.

DEFENDANT: Now, she is talking about the femoral artery. So they are saying that because he got shot in the femoral artery that shows intent to kill. Correct, if I know that I am intending to shoot you in your femoral artery to kill you, then yes that show intent to kill. But if you are just intending to shoot someone out of anger or frustration, I am a layperson and I don't know there is a femoral artery in the leg that you can bleed out in two hours. I don't know that. I didn't' have the specific intent to kill because someone got shot in their

leg. That is my thing.

ATTY. LOMBARDO: So are you really only contesting the criminal attempt homicide?

DEFENDANT: That is why I went to trial, yes.

ATTY. LOMBARDO: So you would admit to shooting him?

DEFENDANT: Aggravated assault.

ATTY. LOMBARDO: Okay.

(Doc. 16-1, pp. 383-84, 392-93, N.T. PCRA Hearing, 9/25/13).

It is clear that Freeland admitted to the conduct that served as the basis for the criminal action, i.e., shooting the firearm. The Superior Court noted that PCRA counsel was correct in concluding that, based on Freeland's admission of the shootings, he could not meet his burden to prove that any alleged claims of ineffectiveness by trial counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Freeland*, 106 A.3d at 777-78 (citation omitted). The Pennsylvania Superior Court addressed Freeland's claim that PCRA counsel abandoned him as follows:

> Appellant's second question, which erroneously assumes the conclusion of his first question (that PCRA counsel abandoned him, despite the PCRA court finding to the contrary), merits no relief. Counsel did not abandon Appellant.
>
> Additionally, Appellant argues that counsel's "no merit" letter was deficient. (*See* Appellant's Brief, at 11-17). Appellant's reliance on counsel's perceived error (that Appellant's *de facto* concession of guilt at the PCRA hearing

35

virtually precluded PCRA relief) is misplaced, and meritless.

Counsel's assessment merely articulated the unassailable conclusion that Appellant, in the face of his admission of the shootings, could not meet his burden to prove that any alleged claims of ineffectiveness by trial counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Spotz, supra* at 311- 2, (citing 42 Pa.C.S.A. § 9543(a)(2)(ii)). Counsel's assessment was correct. As we have already noted, the PCRA court properly decided that counsel did not abandon his client. We have already determined that counsel has substantially complied with the dictates of *Turner/Finley* and will be permitted to withdraw. (*See supra* at 775). Appellant's second issue has no merit.

*Commonwealth v. Freeland*, 106 A.3d at 777-78.

Because the underlying ineffective assistance of counsel claims related to Freeland's identification as the shooter are meritless or insubstantial, PCRA counsel's failure to advance these claims cannot constitute cause to excuse procedural default. Accordingly, this claim for relief will be denied.

## V.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "When

the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

## VI.  Conclusion

For the reasons set forth above, the Court will deny the amended petition for writ of habeas corpus. A separate Order shall issue.

Date:  May 30, 2018

Robert D. Mariani
United States District Judge